# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONDI F.,[1] | |
| Plaintiff, | CIVIL NO. 3:23-CV-01670 |
| v. | (LATELLA, M.J.) |
| FRANK BISIGNANO, | |
| Defendant. | |

## <u>MEMORANDUM</u>

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Rondi F.'s claims for a period of disability and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act. (Doc. 1 at ¶1). The Parties consented to

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano, Commissioner of Social Security*, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

have a magistrate judge conduct all proceedings in this case, including entry of a final judgment. (Doc. 7).[2] For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and the matter will be remanded for rehearing.

## 1. BACKGROUND AND PROCEDURAL HISTORY

On July 27, 2016, Plaintiff Rondi F. ("Mr. F") filed applications for Title II and Title XVI benefits, respectively. (Doc. 1 at ¶5). In these applications, Mr. F. claimed disability beginning July 25, 2015.[3] (*Id.*). The Social Security Administration initially denied Mr. F.'s claims on October 21, 2016. (*Id.* at ¶6). Mr. F. filed a request for a hearing before an Administrative Law Judge ("ALJ") on November 8, 2016. (*Id.* at ¶7). An ALJ conducted the requested hearing on April 9, 2018. (*Id.*).

---

[2] On June 24 we entered an Order providing the parties with notice of our intent to continue to exercise the jurisdiction consented to previously by the parties, absent any objection. (Doc. 21). No such objection was raised.

[3] Plaintiff later amended the alleged onset date to May 1, 2016. (Doc. 11-14 at 6).

In a written opinion dated December 4, 2018, the ALJ determined that Mr. F. was not disabled and therefore not entitled to the benefits sought.  (*Id*. at ¶8).  Plaintiff appealed that decision to the Appeals Council, and subsequently to the District Court.  (Doc. 9-11 at 9-28).[4] The District Court remanded the case.  (*Id*. at 26-27).  Based upon the District Court remand, the Appeals Council issued an order vacating the December 4, 2018 decision and instructing the ALJ that upon remand, he should, *inter alia*, give further consideration to the treating source opinion of Dr. Barclay Wilson.  (Doc. 11-9 at 44-45).

A second hearing was held on June 23, 2021.  Following that hearing, the ALJ issued a partially favorable decision, finding that Plaintiff has been disabled beginning January 24, 2020.  (Doc. 11-15 at 2-24).  Plaintiff also appealed this decision to the District Court.  (Doc. 11-15 at 38).  The District Court again remanded the matter.  (*Id*.).  The Appeals Council vacated the unfavorable part of the decision and remanded the matter.  (Doc. 11-15 at 42).  In its order, the Appeals

---

[4] For clarity, we will cite to the NextGen/ECF document numbers and pagination.

Council noted, among other things, that the ALJ failed to adequately evaluate the treating source opinions of Dr. Wilson and Dr. Lin and directed the ALJ to give further consideration to those opinions on remand. (Doc. 11-15 at 42-43).

A third hearing was held on May 25, 2023. (Doc. 11-14 at 37). On June 20, 2023, the ALJ found:

> Based on the application for a period of disability and disability insurance benefits protectively filed on July 27, 2016, the claimant was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through December 31, 2016, the date last insured.
>
> Based on the application for supplemental security income protectively filed on July 27, 2016, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on January 24, 2020.
>
> The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the non-disability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

(*Id*. at 27). Plaintiff filed a request for review by the Appeal's Council but the Appeals Council did not assume jurisdiction, and so, the ALJ's

decision became final on August 20, 2023.  (Doc. 1 at ¶13).

Plaintiff initiated this action on October 10, 2023.  (Doc. 1).  The Commissioner responded on January 16, 2024, filing his Answer and providing the requisite transcripts from the disability proceedings. (Docs. 10, 11).  The parties then filed their respective briefs (Docs. 14, 18, 19), with Mr. F. alleging that three errors warrant reversal or remand.  (Doc. 14 at 5).

## 2. THE ALJ'S DECISION

In a decision dated June 20, 2023, the ALJ determined Mr. F. "was not disabled prior to January 24, 2020, but became disabled on that date and has continued to be disabled through the date of this decision." (Doc. 11-14 at 26).  The ALJ further specified that Mr. F. "has not been under a disability, within the meaning of the Social Security Act at any time through December 31, 2016, the date last insured." (Doc.  11-14 at 26).  The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The ALJ determined that Mr. F. met the insured status requirements of the Social Security Act through December 31, 2016.  (Doc. 11-14 at 8).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R § 404.1520(a)(4)(i).  If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience.  20 C.F.R. § 404.1520(b).  SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit.  20 C.F.R. § 404.1572.  In making this determination, the ALJ must consider only the earnings of the claimant.  20 C.F.R. § 404.1574.  The ALJ determined Mr. F. "has not engaged in [SGA] since May 1, 2016, the alleged onset date."  (Doc. 11-14 at 8).  Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled."  20 C.F.R. § 404.1520(c).  If a claimant

establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Mr. F. had the following severe impairments: degenerative disc disease of the lumbar spine; deep vein thrombosis of the left lower extremity; right leg tibia displaced fracture; pulmonary emboli; and obesity. (11-4 at 9).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Mr. F.'s impairments, considered individually or in combination, met or equaled a Listing. (Doc. 11-14 at 12). Specifically, the ALJ considered Listings 1.00 *et seq.*, (Musculoskeletal Disorders); 3.00 *et seq.* (Respiratory Disorders); 4.00 *et seq.* (Cardiovascular System), and SSR-19-2p. (Doc. 11-14 at 12).

Between steps three and four, the ALJ determines the claimant's

residual functional capacity ("RFC"), crafted upon consideration of the

medical evidence provided.  The ALJ determined that:

> since May 1, 2016, [Mr. F.] has the residual
> functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b)
> with the following limitations: [Mr. F.] could
> occasionally perform pushing and/or pulling
> motions with the upper and lower extremities,
> such as operating levers, hand controls, pedals,
> and foot controls. Also [Mr. F.] could occasionally
> stoop, crouch, kneel, use ramps and climb stairs;
> and perform jobs that do not require balancing,
> crawling, or climbing of ladders, ropes, or
> scaffolding. Also, [Mr. F.] could tolerate
> occasional exposure to vibrations, extreme cold,
> high humidity, and atmospheric conditions that
> potentially cause respiratory irritation, such as
> strong fumes, noxious odors, concentrated dust,
> or gases, and work environments with poor
> ventilation. Further, [Mr. F.] can perform jobs
> that do not require exposure to workplace
> hazards, such as unprotected heights and
> dangerous, moving machinery.

(Doc. 11-14 at 14).

Having assessed a claimant's RFC, at step four the ALJ must

determine whether the claimant has the RFC to perform the

requirements of their past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  A finding that the claimant can still perform past

relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined Mr. F. is unable to perform past relevant work. (11-14 at 24). The ALJ noted past relevant work as a motor vehicle assembler, a packer, and a warehouse worker, but the exertional requirements of each exceeded Mr. F.'s RFC. (*Id*.).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that prior to the established disability onset date, Mr. F. was an individual closely approaching advanced age. (Doc. 11-14 at 24). On January 24, 2020, Mr. F.'s age category changed to an individual of advanced age. (*Id*.); *see also* 20 C.F.R. § 404.1563. The ALJ also noted that Mr. F. has a limited education as considered in 20 C.F.R. § 404.1564. (Doc. 11-14 at 25). The ALJ determined that upon consideration of these factors, Mr. F.'s RFC, and the testimony of a vocational expert, "[p]rior to January 24, 2020, the date the claimant's age category changed, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Doc. 11-14 at 25). The ALJ specifically identified occupations of cashier, marker, and inspector/packer. (Doc. 11-14 at 26).

As a result of this analysis, the ALJ determined that Mr. F. was not disabled prior to January 24, 2020, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. (Doc. 11-14 at 26). The ALJ further stated that Mr. F. was not disabled at any time through December 31, 2016, the date last insured. (*Id*.).

3. S<small>TANDARD OF</small> R<small>EVIEW</small>

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.   42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits.   42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process.   20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1)

whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).  The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work.  20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a).  Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience.  20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to

determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In

determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Mr. F. was disabled during the period of time in question, but whether the Commissioner's finding that Mr. F. was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### 4. DISCUSSION

Mr. F. asserts that the ALJ committed three errors that warrant reversal or remand. (Doc. 14 at 5). First, he argues that the ALJ

rejected the opinions of his treating physicians for erroneous reasons.

(*Id.* at 7).  Second, he claims that the ALJ failed to incorporate all of his

credibly established limitations in the hypothetical that he posed to the

vocational expert.  (*Id.* at 17).  Third, he alleges that, because he cannot

perform light work and is limited to sedentary exertion by his

impairments, a finding of disability is directed by the Medical

Vocational Guidelines.  (Doc. 14 at 19).  We will first consider Plaintiff's

argument that the ALJ rejected the opinions of his treating physicians.

### A. EVALUATION OF OPINIONS OF TREATING PROVIDERS

During the course of this protracted litigation, the Appeals

Council twice remanded prior ALJ decisions with specific instructions to

give further consideration to the opinion of Dr. Barclay Wilson, one of

Plaintiff's treating physicians.  (*See.* Docs. 11-9 at 43-45; 11-15 at 42-

43).  In the second remand order, the Appeals Council also directed the

ALJ to also give further consideration to the treating source opinion of

Dr. Paul Lin.  (Doc. 11-15 at 43).  The Appeals Council further indicated

that, "[a]s appropriate, the Administrative Law Judge may request the

treating sources provide additional evidence and/or further clarification

of the opinions and medical source statements about what the claimant

can still do despite the impairments (20 CFR 404.1520b and 416920b)."

(Doc. 11-15 at 43).  A review of the record reveals that the opinions of

Plaintiff's treating physician, Dr. Wilson, were not given proper

consideration.

To evaluate the ALJ's treatment of these opinions, it is necessary

to understand the requirements for evaluating the opinions of treating

physicians.  In March of 2017, the Social Security Regulations

regarding consideration of medical opinion evidence were amended.  *See*

20 C.F.R. 404.1520c(c).  However, for claims filed before March 27,

2017, ALJs are required to apply the Social Security Regulations' pre-

2017 rules to assess the opinion of a treating physician.[5]  *See* 20 C.F.R.

§ 416.927; *see also Mercado v. Kijazi*, 629 F. Supp. 3d 528, 535 (M.D. Pa.

---

[5] The March 27, 2017 amendment to the regulations eliminated the
treating physician rule. *See* Revisions to Rules Regarding the
Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  By
the terms of that amendment, however, the treating physician rule
continues to apply to applications filed before that date, such as in this
case.  *Foux v. Kijakazi*, No. 3:22-CV-01144, 2023 WL 6201379, at *5
(M.D. Pa. Sept. 22, 2023).

2019).  Mr. F. initially filed his application for benefits on July 27, 2016.

Therefore, the pre-2017 rules, referred to as the "treating physician

rule," apply.

Under the so called "treating physician rule," the opinion of a

treating source is afforded controlling weight where well-supported by

objective medical evidence and not inconsistent with substantial

evidence in the record.  *See* 20 C.F.R. § 404.1527; *Morales v. Apfel*, 225

F.3d 310, 316 (3d Cir. 2000).  "An ALJ may reject a treating physician's

opinion outright only on the basis of contradictory medical evidence, but

may afford a treating physician's opinion more or less weight depending

upon the extent to which supporting explanations are provided."

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v.*

*Heckler*, 753 F.2d 283, 236 (3d Cir. 1999)).  However, in the Third

Circuit, "an ALJ may not reject a supported treating medical opinion

with only lay interpretation of medical evidence."  *Burns v. Colvin*, 165

F. Supp. 3d 579, 588 (M.D. Pa. 2016) (citing *Frankenfield v. Bowen*, 861

F.2d 405, 408 (3d Cir. 1988)).  Merely citing to contradictory medical

evidence, as opposed to contradictory medical opinions, is insufficient.

*Ferguson v. Schweiker*, 765 F.2d 31, 36-37 (3d Cir. 1985).  Under the

treating physician rule, "the Third Circuit has only affirmed an ALJ who rejects a treating source medical opinion when there are two or more medical opinions that the claimant is not disabled." *Burns*, 156 F. Supp. 3d at 588-89 (citing *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir. 1991); *Plummer v. Apfel,* 186 F.3d 422, 430 (3d Cir. 1999); *Brown v. Astrue,* 649 F.3d 193, 194 (3d Cir. 2011).

Where a conflict exists between a treating source and another medical source, an ALJ accept, reject, or weigh each opinion, so long as "good reasons" are provided for doing so.  20 C.F.R. § 404.1527(c)(2).  It is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  The purpose of this is to allow for meaningful judicial review. *Burnett v. Comm'r Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

## A. Substantial Evidence Does Not Support the ALJ's Treatment of Dr. Wilson

Mr. F. first claims that the ALJ erroneously assigned Dr. Wilson, one of his treating physicians, little weight.  (Doc. 14 at 11).  Citing to January 6, 2016 and June 20, 2017 MRIs, Mr. F. claims that "objective imaging evidence, as well as clinical findings of paraspinal muscle

spasms . . . and restricted lumbar range of motion . . . support[] Dr. [Wilson's] limitation to sedentary exertion." (Doc. 14 at 12). Mr. F. also proffers the evidence of his right leg fractures and osteopenia and asserts that those impairments, "in combination with the severe lumbar degenerative disease, morbid obesity, pulmonary emboli and deep vein thrombosis significantly limited his ability to walk, stand, l[i]ft and carry." (*Id.* at 13). Mr. F. further asserts that the ALJ's reliance on Dr. Lin's opinion as an indication that he is capable of light work was misplaced. (*Id.* at 14). Mr. F. alleges that because Dr. Lin opined that he was permanently unable to lift more than fifteen pounds, he would not be able to perform light work and instead would be limited to sedentary work. (*Id*). Accordingly, the ALJ's citation to Dr. Lin's opinion as being in conflict with Dr. Wilson's opinion was erroneous. (*Id.*).[6] Plaintiff alleges that if the ALJ had properly credited Dr. Wilson's opinion, he would have found Plaintiff disabled. (*Id.* at 10).

------

[6] Mr. F. also suggests that the ALJ improperly discounted Dr. Wilson's opinion because, in the ALJ's view, Dr. Wilson did not indicate that the limitations continued past December 31, 2016. (Doc. 14 at 13).

*(footnote continued on next page)*

The Commissioner responds to this argument by asserting that the ALJ "meticulously explained why he assigned this opinion little weight." (Doc. 18 at 15).  The Commissioner cited to the ALJ's opinion, which noted that Dr. Wilson's treatment notes and observations did not support his opinions regarding the significant sitting, standing, and walking limitations that would preclude all full-time work.  (*Id*.).  The Commissioner acknowledged the positive findings assessed by Dr. Wilson, but stated that those findings and the imaging of Mr. F.'s back and legs supported a finding that he was restricted to light work, not a finding that he unable to perform all work.  (*Id*.).  Additionally, the Commissioner pointed out that the ALJ noted that Dr. Wilson's opinion was inconsistent with Dr. Lin's conclusion that Plaintiff was able to perform light work.  (*Id*. at 16).  Finally, the Commissioner cited the ALJ's finding that the record lacked evidentiary support for Dr.

—————————————

However, as the Commissioner pointed out, the ALJ indicated – notwithstanding his concern regarding the timeframe considered by Dr. Wilson – that he "considered the opinion for the entire time at issue, May 1, 2016 to January 23, 2020." (Doc. 11-14 at 21).  Thus, this argument raised by Mr. F. is without merit.

Wilson's opinion that Mr. F. would miss three days of work per month. (*Id*.). The Commissioner asserts that Mr. F. is requesting that the Court reweigh the evidence, which is inappropriate. (*Id*. at 17). Rather, the Commissioner maintains that substantial evidence supports the ALJ's conclusion with respect to Dr. Wilson's opinions. (*Id*. at 18).

We turn now to Dr. Wilson's opinions and the ALJ's assessment of the same. Dr. Wilson issued a Medical Opinion on February 27, 2018. (Doc. 11-7 at 120-22). He opined that Mr. F.'s maximum ability to lift and carry on an occasional or frequent basis was less than 10 pounds; his maximum ability to stand and walk was less than 2 hours per 8 hour work day; his maximum ability to sit was less than 2 hours per 8 hour work day; and that he could only sit or stand for 10 minutes before needing to change positions. (*Id*. at 120). He opined that he could climb stairs occasionally, but could never twist, stoop, crouch, or climb ladders. (*Id*. at 121). Further, he indicated that Mr. F.'s ability to reach, and push and pull were limited by his impairments, but his ability to handle (gross manipulation), finger (fine manipulation), and feel were not affected. (*Id*.). Dr. Wilson also opined that Mr. F. should avoid all exposure to hazards and avoid moderate exposure to extreme

cold, but had no limitations with respect to extreme heat, wetness, humidity, noise, and fumes. (*Id*.). Finaly, he indicated that Mr. F. would be absent "about three times a month." (*Id*. at 122).

Dr. Wilson authored a second opinion on January 9, 2019, directed to the Pennsylvania Department of Public Welfare. (Doc. 11-13 at 144). On this two-page form, Dr. Wilson indicated that Mr. F. is "permanently disabled." (*Id*. at 146). This form was not detailed, but did include a section for Dr. Wilson to indicate the primary and secondary diagnoses. (*Id*. at 146.) The writing is difficult to decipher. (*Id*.). However, it appears as though one of the two primary diagnoses indicated by Dr. Wilson was pulmonary thrombosis. (*Id*). The second primary diagnosis is not legible. (*Id*). The secondary diagnoses are sleepiness and depression. (*Id*.).

The ALJ gave Dr. Wilson's February 27, 2018 opinion little weight. (Doc. 11-14 at 21). The ALJ stated:

> Relative to the entire time at issue for this remand, the doctor's opinion is not consistent with the longitudinal record, nor do his own examinations/records support the outlined limitations. First, the limitations outlined by Dr. Wilson, specifically the sit, stand, and walk limitations, eliminate all full-time work, but

when the claimant saw him, the clinical examination do not support the same. To illustrate, the positive physical findings in 2016 from his examinations noted a tender lumbar spine and restricted lumbar range of motion (Exhibit C6F/1). In 2017, Dr. Wilson noted a tender lumbar spine and tender left knee (Exhibit C6F). In 2018, Dr. Wilson's examinations noted a tender and swollen right leg; a tender lumbar spine and muscle spasms with limited lumbar range of motion; left lower leg edema; edema of both legs; fingers swollen in his right hand; and a tender and swollen right knee (Exhibit C11F). Lastly, in 2019, his examinations noted a tender right ankle; an abscess on his right leg; and a tender lumbar spine (Exhibit C11F). While these findings, and the lumbar MRIs from 2016, 2017, and 2019; the right lower extremity MRI; the chest x-rays and the left lower extremity deep vein thrombosis diagnostic testing support limiting the claimant to light work, with push/pull, postural and environmental limitations, they do not support the limitations outlined by Dr. Wilson which eliminates all work (Exhibits C2F, C4F, C6F, C7F, C11F, C16F, C19F). Second, Dr. Wilson as the primary care physician referred the claimant to Dr. Lin for an orthopedic consultation. Dr. Lin, an orthopedic surgeon, indicates the claimant is capable of light work, which does not correlate with the limitations outlined by Dr. Wilson (Exhibits C6F/21, C7F). Third, there is nothing in the record to support that the claimant would miss three days of work a month, and the doctor does not outline a reason for this indication. Thus, it appears as if Dr. Wilson's outlined restrictions are based on the claimant's self-reported

limitations, rather than diagnostic and clinical
examination findings. For these reasons, his
opinion is given little weight.

(Doc. 11-14 at 17-18).  Likewise, the ALJ gave Dr. Wilson's January 9,

2019 opinion little weight.  With respect to that opinion, the ALJ stated:

> Dr. Wilson indicates the claimant is permanently
> disabled. A statement by a medical source that a
> claimant is "disabled", is an issue reserved to the
> Commissioner (20 CFR 404.1527(d) or 416.927).
> Here, Dr. Wilson does not outline what the
> claimant is capable of doing. Notably, this is a
> check the box form with the only additional
> information provided relative to the claimant's
> physical capabilities being a section where the
> claimant outlines what he subjectively believes
> his limitations are. Moreover, the examination
> from Dr. Blakeslee, from January 3, 2019, which
> is the closest to the date the doctor authored his
> opinion, notes normal cervical range of motion; no
> cervical tenderness; no spasm of the bilateral
> paraspinal muscles; no clubbing, cyanosis, or
> edema of the extremities; and a bilateral negative
> straight leg raise test (Exhibit C11F/29). For
> these reasons, the opinion is given little weight.

(Doc. 11-14 at 22).

It is clear from the ALJ's opinion that the primary reason for

discounting Dr. Wilson's opinions was the ALJ's own lay interpretation

of the medical evidence.  (*See* Doc. 11-14 at 17-18) (citing as his first

reason for affording little weight to Dr. Wilson's opinion medical

findings that the ALJ states do not support the degree of limitations assessed by Dr. Wilson); (*see also* Doc. 11-14 at 22) (noting that Dr. Wilson's opinion that Mr. F. is permanently disabled is not supported by certain specific medical findings from an examination conducted by a different physician).

The only medical opinion cited by the ALJ in support of his decision to afford little weight to Dr. Wilson's opinion, was that of Dr. Lin. (Doc. 11-14 at 17-18). The ALJ stated, "Dr. Lin, an orthopedic surgeon, indicates the claimant is capable of light work, which does not correlate with the limitations outlined by Dr. Wilson." (*Id*.). That rationale, however, is complicated by the fact that Dr. Lin's opinions contain an internal conflict. In his notes from a January 22, 2018 visit with Mr. F., Dr. Lin states that he did not believe Mr. F. was capable of doing "vigorous physical work," but that he was "employable at the light physical demand level." (Doc. 11-7 at 145). However, in his notes from that same date, Dr. Lin opined that Mr. F. could not lift more than 15 pounds. (*Id*. at 147). Light work, as defined by the Social Security Regulations, requires an ability to lift and carry up to 20 pounds. *See* 20 C.F.R. § 404.1567; SSR83-10. Thus, an assessed limitation of an

ability to only lift up to 15 pounds is inconsistent with employment at the light work level. Because of this conflict, it is unclear whether Dr. Lin actually understood Mr. F. to be capable of light work. Given this clear conflict, the ALJ could have, as suggested by the Appeals Council, requested further clarification from Dr. Lin. (*See* Doc. 11-15 at 43). However, absent clarification, we cannot say that Dr. Lin's January 22, 2018 opinion constitutes a "contradictory medical opinion" sufficient to disregard the opinion of Dr. Wilson, another treating physician. *See Ferguson*, 765 F.2d at 37.

Because the ALJ based his decision to afford little weight to Dr. Wilson, a treating physician, upon his own law interpretation of medical records and only a single medical opinion, which, we cannot say was contradictory to Dr. Wilson's assessed limitations given the unresolved conflict contained therein, we are unable to say that substantial evidence supports the ALJ's treatment of Dr. Wilson's opinion.

Had the ALJ given controlling weight to Dr. Wilson's opinion and adopted the limitations assessed by Dr. Wilson in his RFC, Mr. F. would have been found disabled. (*See* Doc. 11-8 at 551) (vocational expert testifying that an individual limited to less than ten pounds lifting and

carrying, less than two hours total standing and walking during an eight-hour day, and less than two hours total sitting during an eight-hour shift would not be able to do any work); *see also* (Doc. 11-10 at 641) (vocational expert testifying that there would be no circumstances where an individual would be able to miss approximately three days of work per month).  Accordingly, we cannot conclude that this error was harmless.

Because remand is appropriate based upon these grounds, we decline to address Plaintiff's other allegations of error.  A remand may produce different results as to those issues, making discussion of them moot.  *See Burns*, 156 F.Supp.3d at 598.

## 5. <u>REMEDY</u>

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).  However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."

*Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").  Because the Court concludes that the ALJ's treatment of Dr. Wilson, a treating physician, was not supported by substantial evidence, further development of the record is required.  Accordingly, the decision of the Commissioner will be vacated and the case will be remanded.

### 6. <u>CONCLUSION</u>

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision will be **vacated** and the case will be **remanded** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence.

An appropriate Order is filed simultaneously with this Memorandum.

**Dated:** November 17, 2025          *<u>s/ Leo A. Latella</u>*
                                      **LEO A. LATELLA**
                                      **United States Magistrate Judge**